IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| BRYAN BAILEY, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | No. 1:21-cv-01124-STA-jay |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH, AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

On September 7, 2021, Bryan Bailey filed a pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.) The Government filed an answer/response on January 14, 2022. (ECF No. 8.) The Government attached to its answer/response an affidavit provided by Attorney Scott Kirk. (ECF No. 8-1.) Bailey filed a reply to the answer on April 14, 2022. (ECF No. 11.)

On September 2, 2022, Bailey filed a document styled "Motion to Withdraw Prosecutor Misconduct from Mr. Bailey's 2255." (ECF No. 13.) The Court granted this motion on October 21, 2022, and Claim 3 was dismissed.[1] (ECF No. 16.) The remaining claims in Bailey's § 2255 motion allege ineffective assistance of counsel by Attorney Kirk. For the reason set forth below, Bailey's motion pursuant to 28 U.S.C. § 2255 is **DENIED**.

---

[1] Claim 3 alleged numerous instances of "Prosecutorial Misconduct." (Mot. at pp. 7, 22-26, ECF No. 1.)

## BACKGROUND

On February 24, 2015, a federal grand jury sitting in the Western District of Tennessee returned an indictment against Sandra Bailey, her husband Calvin Bailey, and alleged co-conspirator Cindy Mallard in criminal action 1:15-cr-10011-STA. The indictment charged all Defendants with conspiring to commit health care fraud and to pay illegal kickbacks in violation of 18 U.S.C. § 371.  The indictment alleged that the conspiracy lasted from November 2009 through August 2010 and that the conspirators committed twenty overt acts in furtherance of the conspiracy.  Additionally, the indictment alleged eight counts of health care fraud (counts two through nine) and nine counts of paying illegal kickbacks (counts ten through eighteen) against Defendant Sandra Bailey. On October 19, 2015, the grand jury returned a superseding indictment, adding a new co-defendant, Bryan Bailey, the son of Calvin and Sandra Bailey.  The superseding indictment charged the Baileys and two unindicted co-conspirators, Dennis and Brenda Sensing, with the same conspiracy offense to commit health care fraud and violate the anti-kickback statute.[2]  The superseding indictment enlarged the scope of the conspiracy, alleging that the conspiracy lasted through April 2013 and that the conspirators committed eighty-five overt acts in furtherance of the conspiracy.  A second superseding indictment returned on May 16, 2016, altered the conspiracy allegation yet again to state that the conspiracy ended February 6, 2014, and that the conspirators had committed seventy-six overt acts in furtherance of the conspiracy.

Attorney Scott Kirk was appointed to represent Bryan Bailey on October 22, 2015.

---

[2] According to the superseding indictment, the Sensings were indicted on similar charges in the Northern District of Mississippi.  Like the original indictment, the superseding indictment and the second superseding indictment charged Sandra Bailey with offenses other than and in addition to the conspiracy charge.  The subsequent indictments also charged Bryan Bailey with the substantive offense of wire fraud.

Defendant Cindy Mallard pleaded guilty to an information in 1:17-cr-10078-egb-1 on September 1, 2017. As part of Mallard's guilty plea, the Goverment agreed to dismiss the conspiracy charge against her in 1:15-cr-10011-STA. Judgment was entered against Mallard on April 25, 2018. The Court granted the motion to dismiss all charges against Mallard in 1:15-cr-10011-STA on May 10, 2018. As a result of Mallard's plea, only the charges against Defendants Calvin Bailey, Sandra Bailey, and Bryan Bailey remained for trial.

A jury was impaneled, and the trial in the criminal action began on October 31, 2017. Prior to the trial, the Government dismissed the second superseding indictment as to over fifty of the overt acts alleged in support of the conspiracy count. After five days of proof and before the Government had completed its case-in-chief, the Court found cause to continue the trial and adjourned on November 14, 2017. Trial resumed on February 12, 2018. Following eight more days of proof, on February 26, 2018, the jury found Bryan Bailey guilty on count one, conspiracy in violation of 18 U.S.C. § 371, and count nineteen, wire fraud in violation of 18 U.S.C. § 1343.[3]

Bailey filed a motion for judgment of acquittal and a motion for new trial both of which were denied. On June 1, 2018, this Court sentenced Bailey to eighty-four months in prison. Bailey appealed his conviction and sentence. Both were affirmed by the Sixth Circuit on September 1, 2020. *See United States v. Bailey*, 973 F.3d 548 (6th Cir. 2020).

The federal conspiracy statute, 18 U.S.C. § 371, makes it a crime for "two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or purpose." 18 U.S.C. § 371. In order to prove conspiracy, the Government must show the following elements: "(1) the existence of an agreement to violate

---

[3] Defendants Sandra and Calvin Bailey were also convicted of the charges brought against them.

the law; (2) knowledge and intent to join the conspiracy; and (3) an overt act constituting actual participation in the conspiracy." *United States v. Peatross*, 377 F. App'x 477, 484 (6th Cir. 2010) (quoting *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007)). The Government need not prove through direct evidence that a defendant joined a conspiracy; "[a] conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *United States v. Elliott*, 876 F.3d 855, 863–64 (6th Cir. 2017). This includes reasonable inferences from a defendant's actions such as the defendant's awareness and perceptions of overt acts in furtherance of the conspiracy and, of course, her direct participation in the acts. *Id*. (citing *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997)). In the final analysis, the proof that a defendant joined a conspiracy "need only be slight." *United States v. Robinson*, 644 F. App'x 431, 434 (6th Cir. 2016) (citing *United States v. Caver*, 470 F.3d 220, 233 (6th Cir. 2006)). This means that the evidence presented to the jury will be sufficient to sustain the verdict even if it does "not remove every reasonable hypothesis but guilt." *Id*. (citing *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011)).

Here, the Government alleged that the conspiracy had as its object the enrichment of the co-conspirators by payments from Jaspan Medical Systems and each other generated by the sale of power wheelchairs "(1) for patients who had not been properly evaluated for power wheelchairs, (2) for patients who had been referred to the defendants by individuals . . . who had been paid kickbacks to identify patients; and (3) for patients who had been evaluated by [medical] providers who had been paid kickbacks to see patients." Second Superseding Indictment ¶ 18 (ECF No. 128, 1:15-cr-10011-STA). The jury was presented with circumstantial evidence that Defendants were aware of and participated in a common scheme to achieve the objects of the alleged conspiracy

4

and had willingly and voluntarily joined the conspiracy and then determined that the Government had met its proof beyond a reasonable doubt.

## ANALYSIS

### Legal Standard

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* A petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

In the present case, Bailey claims that Attorney Kirk provided ineffective assistance of counsel. A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude cognizable in a § 2255 proceeding. *See id.* Such a claim is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 966. To succeed on an ineffective-assistance claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The

benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

In *Bobby v. Van Hook*, the Supreme Court reiterated that an objective standard of reasonableness is a general standard:

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Restatements of professional standards, we have recognized, can be useful as "guides" to what reasonableness entails, but only to the extent they describe the professional norms prevailing when the representation took place.

*Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (citations omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive

6

the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

There is a "strong presumption that defense counsel's decisions are guided by sound trial strategy," but "[t]he trial strategy itself must be objectively reasonable." *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001). "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Id.* at 615-16. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

**Claims**

Bailey contends that Attorney Kirk's representation was deficient in several aspects. His first specific contention is that Kirk was ineffective for failing to disclose reciprocal discovery in a timely manner. In his reply, Bailey claims that he "begged" Kirk to turn in his discovery in March and October 2017. In his affidavit, Kirk avers that, to the contrary, the Baileys failed to provide their attorneys with the documents and materials they claimed would benefit them as reciprocal discovery.

The Government's motion to preclude introduction and use of Defendant's late filed discovery (ECF No. 219, 1:15-cr-10011-STA) states that Attorney Kirk emailed approximately 243 pages of documents from Bailey on October 26, 2017, which was one work-day before trial. Prior to that date, the Government had not received any discovery from Bailey. (*Id.* at p. 1.) Additionally, "in February 2015, a federal grand jury subpoena was served on Bryan Bailey, requesting any and all documents in his possession from Jaspan Medical Systems, Adults and

7

Children Medical Clinic, and a comprehensive list of records pertinent to this case." (*Id.*) Bailey did not provide any documents in response to the grand jury subpoena. (*Id.*)

The Court conditionally granted the motion in open court on October 31, 2017. During the trial, the Court determined that anything not produced in response to the grand jury subpoena could not be used in Bailey's case-in-chief. (ECF No. 319 at pp. 141-42, 1:15-cr-10011-STA.) The Court specifically stated that "it appears on the surface that Mr. Bryan Bailey was required to produce in response to the subpoena, not under Rule 16 but in response to the subpoena, it appears that those documents were requested by the Government and at least [Prosecutor] Canale is representing to the Court they were not provided and I have no other -- I have no reason not to believe that's the case." (*Id.* p. 141.) The Court further stated that "I don't see how I'm going to be allowed to allow you to use those documents for impeachment purposes or any other purpose, unless you can demonstrate in some form or fashion that they were not covered under the subpoena." (*Id.* p. 141-42.) Subsequently, the Court determined that any failure to comply with the grand jury subpoena should have been addressed contemporaneously and that documents that the defense wanted to use would be taken up at sidebar one document at the time. (*Id.* p. 148.) Ultimately, the defense was allowed to use the documents for impeachment purposes.

The subpoena commanded Bailey to bring certain documents with him when he appeared before the grand jury to testify on February 17, 2015. Attorney Kirk was not appointed to represent Bailey until October 22, 2015. Therefore, the burden to produce the documents requested by the grand jury fell on Bailey and not on Attorney Kirk.

8

As for the Rule 16 documents,[4] the Government has presented Attorney Kirk's affidavit stating that Bailey did not give him the documents so that they could be produced in a timely manner while Bailey contends that he did, in fact, give the documents to Kirk.[5] If the Court credits Bailey's testimony, then Attorney Kirk's performance could be found to have been deficient. However, Bailey has failed to show how the disallowance of the documents prejudiced him, nor has he shown their relevance to his case-in-chief.[6] *See Parafan-Homen v. United States*, 2012 WL 4472262, at *14 (E.D.N.Y. Sept. 25, 2012) (rejecting the movant's claim that his attorneys were ineffective for failing to provide the Government with reciprocal discovery because the movant did not "identify what items his attorneys failed to disclose or their relevance to his case-in-chief" and "wholly unsubstantiated assertions do not raise questions about counsel's conduct.") Accordingly, Bailey has not shown that any error concerning the purported failure to provide

---

[4] Rule 16(b)(1)(A) provides:
> If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if: (i) the item is within the defendant's possession, custody or control; and (ii) the defendant intends to use the item in the defendant's case-in-chief at trial.

Fed. R. Crim. P. 16(b)(1)(A). As the rule provides, the defendant's duty to disclose is not triggered until the Government complies with the defendant's discovery requests. Upon the Government's request, the defendant assumes a continuing duty to promptly disclose newly discovered evidence. The court, in its discretion, may sanction a defendant for failing to comply with his discovery obligations under Fed. R. Crim. P. 16(d)(2) and did so in the present case.

[5] Both Bailey's § 2255 motion (ECF No. 1) and his reply (ECF No. 11) to the Government's response are sworn under penalty of perjury. *See Zainalian v. Memphis Bd. of Educ.*, 3 F. App'x 429, 431 (6th Cir. 2001) (citing 28 U.S.C. § 1746) ("A litigant may [ ] controvert sworn affidavits and place material facts into dispute by submitting an unsworn statement that is subscribed by him as being true under penalty of perjury.")

[6] As discussed above, Bailey's defense was allowed to use the documents for impeachment purposes.

reciprocal discovery led to such prejudice that it deprived him of a fair trial as required by *Strickland*.

In his second contention, Bailey asserts that Attorney Kirk was ineffective for failing to investigate the case, including failing to find certain witnesses. An attorney's failure to investigate and call a witness can constitute the ineffective assistance of counsel when such testimony would have resulted in a reasonable probability of acquittal. *See Towns v. Smith*, 395 F.3d 251, 258–60 (6th Cir. 2005). Here, however, Bailey has not carried his burden of establishing that his trial counsel was ineffective in this regard.

> The failure to investigate or call a particular witness can constitute ineffective assistance of counsel in violation of the Sixth Amendment. *See*, *e.g.*, *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004) (collecting cases). But cases in which courts have found ineffective assistance under those circumstances involved not only a complete failure on the part of counsel to investigate the witness, or explain the failure to investigate, but also a showing that the witness or witnesses whom counsel failed to investigate did, in fact, have favorable testimony to offer. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 356–57 (6th Cir. 2006); *Towns v. Smith*, 395 F.3d 251, 258–59 (6th Cir. 2005); *Clinkscale*, 375 F.3d at 443.

*Sowell v. Collins*, 557 F.Supp.2d 843, 883 (S.D. Ohio 2008). Those circumstances are not present in this case.

Kirk's affidavit refutes Bailey's assertion. For example, Kirk and the other attorneys met with each other and the defendants to discuss the case, and there was a court-appointed investigator on the case. The record shows that he requested and received discovery. (ECF No. 101, 1:15-cr-10011-STA.) According to Kirk, during his independent investigation he found that the facts supported the Government's theory and not that of the defendants.

Kirk's cross-examination of Mia Gott, a government witness, also shows that he had investigated the case, including Medicare procedures and regulations. Kirk asked Gott questions

about the Medicare audit process, the roles of individuals during that process, different Medicare publications, and Form 855, thus showing that he had investigated this portion of the case. (ECF No. 253, 1:15-cr-10011-STA.) He had also investigated sufficiently enough to cross-examine other government witnesses and to call his own witnesses, including Bailey himself. For example, Kirk called Brent Scott, Piper Sweatman, and Olivia Hope Weaver as witnesses for the defense and was sufficiently prepared to conduct their direct and redirect examinations. (*Id.* at ECF Nos. 322-23.)

Bailey suggests that Kirk should have called other witnesses such as Carolyn Hester, Brian Haimovitz, "Ms." Crabtree, "Mr." Young, and patients who had seen Dr. Presson or Mechelle Perry. Attorney Kirk explained in his affidavit that Haimovitz was not the company's owner during most of the time period in the indictment and had nothing to do with Jaspan when it expanded to Mississippi; thus, he was not in a position to testify as a fact witness. Bailey himself testified that Haimovitz "sold out" in 2008. As for other purported witnesses that Attorney Kirk either did not locate and/or call to the witness stand, including expert witnesses, Kirk also averred that their testimony would not have been helpful to the defense in that many of these witnesses did not see what happened at Jaspan, nor were they able to provide helpful information. *See Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) ( "[D]efense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant.")

Bailey has failed to point to specific testimony that the potential witnesses could have provided that would, in fact, have been helpful. Instead, as noted by the Government, Bailey fails to state what those witnesses would have said or how their testimony would have affected the trial. Issues mentioned in a vague or "perfunctory" manner are deemed waived. *See McPherson v.*

11

*Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." (citation omitted)).

Attorney Kirk was in the best position to evaluate which witnesses would support Bailey's defense and which would not. His decisions must be accorded the "highly deferential" review required by *Strickland*. Bailey has failed to show how calling Medicare attorneys, doctors, and other medical employees to testify about Medicare rules and regulations would have had led to a different outcome at trial. Thus, under *Strickland*, Bailey has failed to show prejudice.

Next, Bailey posits that Kirk was ineffective for failing to object to charts, graphs and spreadsheets used by the Government. As Kirk addresses in his affidavit, he did, in fact, object to some of these items. However, the items were either demonstrative aids allowable under the rules of evidence or were summary evidence, and the foundations for their admission were laid for their admission. Bailey has failed to show what objection Attorney Kirk could have made to these items that he did not make. The only "chart" Bailey specifically mentions is one of Sandra Bailey's phone records which were introduced at trial as an exhibit. (ECF Nos. 292, 321, 1:15-cr-10011-STA.) However, he has failed to show how the phone records impacted his case. As Bailey has failed to make any argument as to how these records prejudiced him and what objections Kirk could have made, the Court must reject this portion of Bailey's claims.

Bailey claims that Kirk was ineffective for failing to impeach Dennis Sensing, Tina Jaspan, and Mechelle Perry.[7] However, Kirk did, in fact, cross-examine Sensing and Perry. (*Id.* at ECF

---

[7] Other than knowing Bailey and where he worked, Perry made no mention of Bryan Bailey in

12

Nos. 313, 319.) In particular, Kirk questioned Sensing about his prior inconsistent statements, who else he worked with besides Bailey, and issues with the IRS issues that caused Sensing to work under his wife's name. Kirk also questioned Tina Jaspan on various issues, including the roles of Bailey and Piper Sweatman with the company, a lead generation program to pay for leads, and her knowledge of Sensing's ownership of the Mississippi clinic.

"[W]hether, and to what extent, a witness should be cross-examined is a 'virtually unchallengeable' strategic decision if it is made after considering the relevant law and facts." *Augustin v. United States*, 2019 WL 11892157, at *4 (6th Cir. Feb. 1, 2019) (quoting *Strickland*, 466 U.S. at 690). Kirk's affidavit and the trial transcript belie Bailey's suggestion that Kirk's cross-examination strategy was not made "after considering the relevant law and facts."

Bailey next claims that Attorney Kirk was ineffective for failing to object to a "misrepresentation and false belief of the Medicare rules and guidelines by the government" and for failing to offer alternative legal theories regarding Medicare regulations to the jury. In his affidavit, Kirk explains that challenging the Medicare rules and regulations would have led to a different defense than the one presented by Defendants. As it was, Defendants' strategy was to deny and try to discredit the proof presented by the Government, i.e., patients did not need the equipment, had never seen a doctor, kickbacks were paid, and documents were forged. A challenge to the Medicare rules and regulations would have amounted to Defendant Baileys admitting their conduct instead of proceeding with their chosen strategy of denying/discrediting the Government's proof. Declining to argue inconsistent defenses generally does not render

---

her direct testimony. Instead, she testified about Sandra Bailey, Cindy Mallard, and certain patients. (*Id.* at ECF No. 313.) Therefore, there was no need for Attorney Kirk to cross-examine or "impeach" her.

13

counsel ineffective. *See United States v. Ahmad*, 62 F.3d 396 (5th Cir. 1995) (unpublished table decision) (citing *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988)). *Accord Heaton v. Nix*, 924 F.2d 130, 133 (8th Cir.1991); *Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998); *Hubbard v. Haley*, 317 F.3d 1245, 1260-61 (11th Cir. 2003).

Bailey also claims that his attorney was ineffective for failing to object to a false interpretation of the Anti-Kickback Statute. The Court correctly instructed the jury on the elements of the statute, and the jury found that there was sufficient evidence to convict Bailey and his parents of committing conspiracy to commit healthcare fraud and sufficient evidence to convict Sandra Bailey of paying illegal kickbacks. These convictions were affirmed by the Sixth Circuit. *See Bailey*, 973 F.3d at 566-67 ("Sufficient evidence supported Sandra's, Calvin's, and Bryan's convictions for conspiracy to commit healthcare fraud," and "[s]ufficient evidence supports each of Sandra's convictions for illegal remuneration involving health care fraud.") Thus, there was no "false interpretation" to which Attorney Kirk should have objected.

Bailey next claims Attorney Kirk was ineffective for failing to object to prosecutorial misconduct which involved the Government's vouching for witnesses and purportedly improperly appealing to the jury. Even if the Government had made improper remarks in its closing argument, the Court instructed the jury that they must only consider the evidence in the case, what the lawyers say is not evidence, and what they say is not binding on the jury. Such an instruction generally corrects any improper prosecutorial statements.

As explained in *Curruthers v. United States*, 2020 WL 3913581 at *9 (W.D. Tenn. July 10, 2020),

> Curruthers' counsel's decision not to request a contemporaneous curative instruction was not objectively unreasonable because a "trial court can generally

14

> correct [improper prosecutorial statements] by instructing the jury that closing arguments are not evidence." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (citing *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001)); *cf. Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974) (holding that a prosecutor's ambiguously improper remarks during closing argument did not violate defendant's right to a fair trial because the court addressed the remarks and gave a curative instruction later in the jury instructions). It was not objectively unreasonable as a trial tactic for Curruthers' counsel not to request a contemporary curative instruction. *See Schauer v. McKee*, 401 F. App'x 97, 101 (6th Cir. 2010) ("Not drawing attention to a statement may be perfectly sound from a tactical standpoint.") (citing *United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006)). Once the Court had decided that its final jury instruction was sufficient to avoid the jury's being misled, a request for a contemporaneous instruction would have been unavailing. Curruthers' counsel's failure to request a contemporaneous curative instruction during closing argument did not "f[a]ll below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

*Curruthers v. United States*, 2020 WL 3913581, at *9 (W.D. Tenn. July 10, 2020). Likewise, in this case, the Court's instructions to the jury cured the possibility of the jury's being misled by any "improper" prosecutorial statements, and Bailey cannot show prejudice on this claim.

Bailey claims that Kirk was ineffective for failing to object to a recording between Wanda Wiggins and Ronnie Winbush. The record shows that, in January 2013, Winbush alerted federal authorities to possible Medicare fraud in West Tennessee. (ECF No. 253 at p. 71.) Agents equipped Winbush with the ability to record telephone calls between himself and other individuals, including Wiggins, and he did so from February 2013 until February 2014. (ECF No. 254 at pp. 61-69; Tr. Exhibit 39.) Contrary to Bailey's claim, Attorney Kirk did object multiple times to the admission of these calls. Prior to trial, counsel for Calvin Bailey filed a motion in limine for the Court to exclude the recordings (ECF No. 213), and Kirk joined in the motion. (ECF No. 214.) Kirk again raised an objection at trial and argued at length against the admission of recording. (ECF No. 254 at pp. 28, 42.) The Sixth Circuit subsequently affirmed the admission of the evidence. *Bailey*, 973 F.3d at 560-63 ("Because the government demonstrated that (1) there was a conspiracy, (2) Bryan

15

was a member of the conspiracy based on evidence independent of Wiggins's out-of-court statements, and (3) Wiggins's out-of-court statements were made in furtherance of that conspiracy, the district court properly admitted the statements pursuant to Federal Rule of Evidence 801(d)(2)(E).") Therefore, Bailey's contention is both factually and legally without merit.

Finally, Bailey claims that Attorney Kirk was ineffective for failing to object to the loss amounts at sentencing and for failing to object to his restitution amount. Bailey is in error. Kirk did, in fact, object to these amounts in his position paper regarding the presentence investigation report. (ECF No. 332.) Moreover, he argued the objections at Bailey's sentencing hearing. (ECF No. 356 at pp. 15-21.) Thus, Bailey's claim fails because it is without a factual basis.

Bailey has not met his burden to show that Kirk's performance was deficient or that he was deprived of a fair trial. The record establishes that Attorney Kirk's trial strategy was reasonable and was made in pursuit of strategic goals. The motion, together with the record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Bailey's conviction and sentence are valid and, therefore, his motion is **DENIED**. Judgment shall be entered for the United States.

## APPELLATE ISSUES

A § 2255 movant may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve

16

encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484). In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the § 2255 motion. Therefore, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the movant must file his motion to proceed *in forma pauperis* in the appellate court. *Id.* In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[8]

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 12, 2024.

---

[8] If Bailey files a notice of appeal, he must also pay the full appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.